NEW LONDON FEDERAL SAVINGS BANK ET AL. *v.*
THOMAS J. TUCCIARONE ET AL.
(AC 16262)

WALTER R. SOLOMONS ET AL. *v.* THOMAS J.
TUCCIARONE ET AL.
(AC 16263)

Landau, Spear and Daly, Js.

Argued November 12, 1997—officially released March 17, 1998

*William R. Moller*, with whom were *Janet P. Sistare*, *Stuart G. Blackburn* and *Anthony F. DiPentima*, for the appellants (plaintiffs).

*Michael D. O'Connell*, with whom, on the brief, were *Julia B. Morris* and *J. Preston Ruddell*, for the appellees (named defendant et al.).

*Opinion*

LANDAU, J. These appeals are from the judgments rendered following defendants' verdicts after a jury trial. These consolidated appeals, which are identical, involve cases consolidated in the trial court.[1] We affirm the judgments of the trial court.

On appeal, the plaintiffs, numerous tenants of commercial real estate and their respective insurance carriers, raise several claims, but only two of the claims are

---

[1] Four cases were tried to the jury; plaintiffs' appeals were taken in these two cases only.

reviewable: (1) that the trial court improperly allowed an expert witness for the defendant owners' to testify beyond the scope of direct examination and to render an opinion not disclosed prior to trial; and (2) that the trial court failed to set aside the verdict, which the plaintiffs claim was against the evidence with respect to their nuisance count.

The jury reasonably could have found the following facts. The plaintiffs conducted their various professions and businesses as tenants on the premises known as Flanders Plaza located at 15 Chesterfield Road in East Lyme, which is owned by the defendants Thomas J. Tucciarone, Michael J. DiProspero, Kaj Snellman and the Snellman Limited Partnership (owners). On September 30, 1988, a fire started in a light fixture on the second floor and spread throughout the premises, causing damage to the property and businesses of the plaintiffs.

To recover the various losses they sustained, the plaintiffs sued several entities;[2] the owners, however, were the only defendants remaining at the time of trial. The two relevant complaints each contain two counts, one alleging numerous acts of negligence and carelessness against the owners with respect to the construction and maintenance of the premises, and one alleging that those acts or omissions also created a nuisance. The cases were tried to a jury in the late spring and early summer of 1996. After the jury answered interrogatories in favor of the owners and rendered defendants' verdicts in all cases, the plaintiffs moved to set aside the verdicts and for a new trial. The trial court denied the motions and rendered judgments in favor of the owners. These appeals followed.

---

[2] The tenant who leased the space where the fire started, the electrician who installed the lighting fixture in that space and the manufacturer of the ballast in the lighting fixture also were defendants prior to trial.

## I

The plaintiffs' first claim concerns the trial court's evidentiary rulings. "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion." *Hall* v. *Burns*, 213 Conn. 446, 451, 569 A.2d 10 (1990). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985)." (Internal quotation marks omitted.) *Hall* v. *Burns*, supra, 455. "In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. *State* v. *Weidenhof*, 205 Conn. 262, 278, 533 A.2d 545 (1987)." *Curry* v. *Burns*, 33 Conn. App. 65, 69, 633 A.2d 315 (1993).

The plaintiffs' claim concerns the testimony of the owners' expert witness, Beth Anderson, an electrical engineer, who was called to render her opinion as to the cause of the subject fire. Anderson's deposition was taken on numerous days prior to trial. In their briefs and at oral argument, the plaintiffs' claim that Anderson's trial testimony was inconsistent with her deposition testimony and the owners' expert witness disclosure made pursuant to Practice Book § 220 (D).[3] The record reveals, however, that the plaintiffs' claim is really an evidentiary one.

---

[3] Practice Book § 220 (D) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner . . . ."

The owners, pursuant to § 220 (D), disclosed Anderson as an expert witness on April 3, 1991, stating, "Anderson will testify with respect to the facts and circumstances of the fire on September 30, 1988 . . . leading [to] her conclusion that the fire was caused within a fluorescent light fixture. . . ." The owners supplemented their disclosure on April 10, 1996, stating, "Beth Anderson will offer expert opinions, substantially in conformity with her deposition testimony, rendered on October 30, 1995, October 31, 1995, November 1, 1995, and December 18, 1995, as supplemented by the information and opinions set forth in the attached letter, of even date." In the subject letter, Anderson stated that the fire was due to a defect in the light ballast. Anderson made no mention of insulation in her letter.

Anderson testified on behalf of the owners at trial. On direct examination, defense counsel asked Anderson if she had an opinion about whether there was insulation on top of the light fixture.[4] The plaintiffs did not object to the question or testimony at the time it was given. On cross-examination, however, the plaintiffs sought to impeach the credibility of Anderson with a prior inconsistent statement.[5] On redirect, counsel for the

---

[1] The colloquy was as follows:

"Q. And what is your opinion as to the cause of the fire?

"A. It is my opinion that the capacitator in ballast number three failed and caused the fire. . . .

"Q. Are you aware that Mr. Haynes has offered an opinion that there was insulation physically on top of this fixture?

"A. Yes, I am.

"Q. Have you in your analysis and investigation . . . been able to determine whether or not there was insulation on top of the fixture?

"A. At times during my investigation I have thought that there was; today, I don't know for sure."

[5] The colloquy was as follows:

"Q. At this time I wish to offer lines five through eight, page 52 of the deposition of Beth Anderson of October 30, 1995, as an exhibit. . . .

"Q. Now, do you have an opinion one way or the other as to whether there was insulation directly on top of fixture number three?

"A. I think there probably was."

owners attempted to rehabilitate Anderson.[6] The plaintiffs objected to the questioning as being outside the scope of prior examination.[7] The trial court heard the arguments of counsel and overruled the objection.[8] We agree with the trial court and find no abuse of discretion.

Direct examination is conducted by the party who calls a witness, and is limited to the substantive facts of the case and then is followed by cross-examination, if any. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) §§ 3.4.2, 3.4.3, pp. 43–48. "While it is settled Connecticut law that inquiry upon cross-examination is limited by the scope of the direct examination; *Grievance Committee* v. *Dacey*, 154 Conn. 129, 150, 222 A.2d 339 (1966), appeal dismissed, 386 U.S. 683, 87 S. Ct. 1325, 18 L. Ed. 2d 404, reh. denied, 387 U.S. 938, 87

[6] The colloquy was as follows:

"Q. Now, in response to questions by [the plaintiffs' attorney], you again indicated that previously you had made statements to the effect that there was [probably] insulation on the fixture, do you recall that testimony?

"A. Yes.

"Q. And I think you also previously testified that you don't hold that opinion today, is that correct?

"A. That is correct.

"Q. And why did you change?

"A. More information became available.

"Q. And what information was that?"

[7] The trial court excused the jury and heard further argument from the parties. During argument, the plaintiffs incorporated a different argument, as they did in their briefs to this court, i.e., that Anderson's opinion concerning paperbacked insulation was an opinion different from that disclosed by the owners pursuant to § 220 (D). This disclosure argument obscures the evidentiary issue that arose during direct, cross- and redirect examination of Anderson.

[8] "The Court: I am going to allow it because . . . I think there has been a lot of questioning on it and the door has been opened. Whether or not it should have been kept closed on direct examination or some other stage is something that this court is not going to be concerned with right now. It has been cross-examined on. And so I am going to allow direct examination in that particular area. I haven't gotten the impression at this time that it is a reversal of her opinion as to causation . . . ."

S. Ct. 2048, 18 L. Ed. 2d 1006 (1967); that scope is determined by all of the evidence offered during direct examination." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole*, 189 Conn, 518, 525, 457 A.2d 656 (1983). "The court could properly allow the proponents to inquire as to any facts which would tend to rebut or modify any material conclusion or inference resulting from the facts elicited on the [cross-examination]." *State* v. *McCarthy*, 197 Conn. 247, 260, 496 A.2d 513 (1985). A party who initiates discussion of an issue, whether on direct or cross-examination, is said to have 'opened the door' to inquiry by the opposing party, and cannot later object when the opposing party so questions the witness. See *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986). "The basic function of a redirect examination is to enable a witness to explain and clarify relevant matters in his testimony which have been weakened or obscured by his cross-examination. . . . Where evidence is introduced showing an apparent [contradiction in testimony, the party offering the testimony] is entitled to explain the circumstances so that the trier can properly evaluate it." (Citation omitted; internal quotation marks omitted.) *Kucza* v. *Stone*, 155 Conn. 194, 198, 230 A.2d 559 (1967).

Here, the owners elicited testimony about insulation from Anderson on direct examination. If the plaintiffs wanted to prevent Anderson from testifying about insulation over the light fixture because such testimony was beyond the scope of the expert witness disclosure made pursuant to § 220 (D), the time to object was during direct examination. Instead, the plaintiffs chose the strategy of impeaching Anderson's credibility. In doing so, they invited further testimony on redirect examination when the owners attempted to rehabilitate their expert. "[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the

same subject." (Internal quotation marks omitted.) *Somers* v. *LeVasseur*, 230 Conn. 560, 565, 645 A.2d 993 (1994).

Under the circumstances, the court exercised its sound discretion in permitting Anderson to testify about the insulation on redirect examination. The plaintiffs questioned Anderson about insulation on cross-examination, and, as the trial court noted, Anderson's opinion, or lack of an opinion, about the insulation was not related to the cause of the fire.

We also agree with the trial court's ruling regarding Anderson's opinion on the issue of moisture in the ballast. On cross-examination, the plaintiffs asked Anderson if she knew that the roof leaked and whether moisture would cause a ballast to malfunction. On redirect, the owners asked Anderson if she had an opinion concerning moisture and the ballast in question. The plaintiffs objected to the question claiming the owners had not disclosed Anderson's opinion concerning moisture. The trial court overruled the objection because, again, the owners had opened the door to the issue of moisture on cross-examination.

## II

The plaintiffs' second claim, which concerns the sufficiency of the evidence, is that the trial court improperly failed to set aside the verdict with respect to their nuisance count because the jury failed to consider the nuisance count and because there was a preponderance of evidence that the owners breached their duties to the tenants by violating applicable building and safety codes, which created a dangerous condition. We disagree.

## A

An examination of the procedural posture of the case is necessary for our review of the first of the plaintiffs'

sufficiency claims. When the jurors retired to deliberate, they were asked to answer four sets of interrogatories, one set for each case, in reaching their verdict. Two sets of interrogatories contained questions only about negligence. The other two sets of interrogatories contained questions concerning negligence and nuisance. While the clerk was reading the jury's verdict, the trial court realized that the jury had not answered the questions addressed to nuisance. Upon reviewing the interrogatories, the trial court and counsel for the parties noted a directional error on the interrogatory form.[9] The trial court then instructed the jury to return to its deliberations and to answer the interrogatories concerning nuisance. The jury retired and answered the interrogatories.

On appeal, the plaintiffs claim that the jury deliberated on the nuisance interrogatories for only five

---

[9] The uncorrected interrogatories and verdict form contained the following language:

"SECTION A: NEGLIGENCE

1. Have the Plaintiffs in this case proven by a preponderance of the evidence that the Defendant Landlords breached one or more of their duties?
        Yes        No
If your answer is 'Yes,' please go on to Question 2.

If your answer is 'No,' you have found that the Defendant Landlords are not liable on the Plaintiffs' Negligence Count. Please go to Section C.

2. If your answer to Question 1 is 'Yes,' have the Plaintiffs in this case proven by a preponderance of the evidence that the breach of one or more duties of the Defendant Landlords was a proximate cause of the Plaintiffs' damages?
        Yes        No
Please go to Section B.

SECTION B: NUISANCE

3. Have the Plaintiffs in this case proven by a preponderance of the evidence that the Defendant Landlords created a nuisance?
        Yes        No
If your answer is 'Yes,' please go on to Section C.

If your answer is 'No,' you have found that the Defendant Landlords are not liable on the Plaintiffs' Nuisance Count.

Please go to Section C.

SECTION C:

You have completed your deliberations. Please have the foreperson sign and date this form . . . ."

minutes and therefore could not have considered the claim of nuisance. Although the record and the transcript do not reflect the amount of time the jury deliberated, the amount of time is not relevant. The plaintiffs did not object to the form of the interrogatories or to the trial court's instructions to the jury to answer the interrogatories concerning nuisance. Therefore, the plaintiffs failed to preserve their claim of error. Practice Book § 315. Furthermore, the trial court instructed the jury to answer the interrogatories concerning the nuisance count. A jury is presumed to follow the instructions it is given. See *Eisenbach* v. *Downey*, 45 Conn. App. 165, 181, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997). Therefore, in the absence of evidence to the contrary; see *State* v. *Sivri*, 46 Conn. App. 578, 583, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997); we must presume that the jury followed the trial court's instructions and properly considered the nuisance claim.

B

The plaintiffs' second sufficiency claim is that the trial court improperly failed to set aside the verdict on the nuisance count because the allegations of the claim were proved by a fair preponderance of the evidence. This claim lacks merit.

To prevail on their nuisance claim, the plaintiffs had to prove not only that they had an ownership interest in the real property; see *Webel* v. *Yale University*, 125 Conn. 515, 525, 7 A.2d 215 (1939); but also that the condition complained of had a natural tendency to create a continuing danger, that the defendants' use of the land was unreasonable or unlawful, and that the condition was the proximate cause of their injuries. See *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 35–36, 404 A.2d 889 (1978). In addition, the plaintiffs also had to prove that the owners had control over the

area that was the source of the nuisance; see *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 184, 527 A.2d 688 (1987); and that the owners intended to bring about the condition that was a nuisance. See *DeLahunta* v. *Waterbury*, 134 Conn. 630, 633–34, 59 A.2d 800 (1948). "Whether any of those essentials exist is ordinarily a question of fact. *Chazen* v. *New Britain*, 148 Conn. 349, 355, 170 A.2d 891 [1961]." *Filisko* v. *Bridgeport Hydraulic Co.*, supra, 36.

The substance of the plaintiffs' nuisance claim against the owners is that there was paperbacked insulation over the light fixture where the ballast failed and that there were no fire walls in the attic of the premises, both of which constituted violations of applicable building and fire codes. Building and fire codes are themselves not evidence of negligence, but only evidence of the standard of care. See *Wendland* v. *Ridgefield Construction Services, Inc.*, 184 Conn. 173, 181, 439 A.2d 954 (1981).

" 'In determining whether a verdict should be set aside, the court is obligated first to review the evidence giving it a construction most favorable to sustaining the jury's verdict. . . . In addition, the trial court's refusal to disturb the jury verdict is entitled to great weight, and every reasonable presumption should be given in favor of its correctness. . . . In reviewing this issue, our sole responsibility is to decide whether, on the evidence presented, the jury could fairly reach the conclusion [it] did.' " (Citations omitted.) *Lester* v. *Resort Camplands International, Inc.*, 27 Conn. App. 59, 68–69, 605 A.2d 550 (1992). " 'It is the province of the jury to weigh the evidence and determine the credibility and the effect of testimony; and we must decide the question whether on the evidence presented, the jury could have fairly reached [its] verdict . . . .' " Id., 69.

Our review of the trial transcript reveals that the evidence on all of the elements of nuisance was well controverted. Jurors are the arbiters of fact and credibility. They are free to believe all, some or none of a witness' testimony. We will not disturb a jury's verdict where the record reveals that the factual issues were in dispute. Therefore, the trial court properly refused to set aside the verdict.

### III

A number of the plaintiffs' claims are not amenable to appellate review. "In order for this court judiciously and efficiently to consider claims of error raised on appeal"; *Karanian* v. *Maulucci*, 185 Conn. 320, 321, 440 A.2d 959 (1981); the parties must clearly and fully set forth their arguments in their briefs. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Krondes* v. *O'Boy*, 37 Conn. App. 430, 436, 656 A.2d 692 (1995).

### A

The plaintiffs claim that the trial court failed to provide them with a fair and impartial trial. Their initial brief merely contains a list of references to the transcript of the trial that allegedly support their claim of impartiality, but cites no legal authority for their claim. In their reply brief, the plaintiffs cite a series of legal principles. The plaintiffs did not, however, analyze the relationship between the facts of this case and the law cited. Therefore, we will not review this claim. See *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996); see also *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593–94 n.26, 657 A.2d 212 (1995) (arguments cannot be raised for first time in reply brief).

## B

Regarding the plaintiffs' claim that the court improperly permitted the owners' expert witness, Anderson, to testify, the plaintiffs cite to the record and to the transcript, but they cite no law in support and provide no analysis of that claim. We will not review such claims, absent law and analysis. See *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, supra, 42 Conn. App. 439 n.12.

## C

With respect to the plaintiffs' claim that the trial court permitted the owners to elicit prior consistent statements from Norm Maxon, the owners' property manager, that were not in dispute, " '[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court.' . . . *Fitzgerald* v. *Fitzgerald*, 16 Conn. App. 548, 554, 547 A.2d 1387, cert. denied, 210 Conn. 802, 553 A.2d 615 (1988)." *Fromer* v. *Freedom of Information Commission*, 36 Conn. App. 155, 156, 649 A.2d 540 (1994). Therefore, we will not review the claim.

## D

The plaintiffs also claim that the trial court improperly admitted into evidence their superseded complaints and failed to admit into evidence the owners' corresponding answers. Our review of the record reveals a lengthy colloquy between the trial court and the parties concerning whether copies of pleadings should go to the jury. The record also discloses that the plaintiffs never offered the pleadings they wanted admitted as evidence for the trial court to rule on their admissibility, and they did not object to the trial court's admission of the superseded complaints as evidence.

"Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . . *State* v. *Lizotte*, 200 Conn. 734, 742A, 517 A.2d 610 (1986). Because of the [plaintiffs'] failure to comply with the rules of practice, the claim concerning the admissibility of this particular evidence was not properly preserved for appeal. *State* v. *Pecoraro*, 198 Conn. 203, 206, 502 A.2d 396 (1985)." (Internal quotation marks omitted.) *State* v. *Ulen*, 31 Conn. App. 20, 30, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). For these reasons, we will not disturb the trial court's rulings concerning the pleadings admitted or not admitted in evidence.

The judgments are affirmed.

In this opinion the other judges concurred.