IN RE LAUREN R.*
(AC 17334)

O'Connell, C. J., and Schaller and Sullivan, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book (1998 Rev.) § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 16—officially released August 11, 1998

*John M. Andreini*, with whom, on the brief, was *Janis C. Jerman*, for the appellant (respondent).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

SULLIVAN, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her daughter. The respondent claims that the trial court improperly concluded that the petitioner, the department of children and families (department), proved by clear and convincing evidence the statutory grounds for termination under General Statutes (Rev. to 1995) § 17a-112. Specifically, the respondent claims that the trial court improperly (1) concluded that the respondent failed to achieve a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in her daughter's life pursuant to § 17a-112 (b) (2), (2) concluded that the respondent's daughter was denied, by reason of the respondent's acts of commission or omission, the care necessary for her well-being pursuant to § 17a-112 (b) (3), (3) concluded that the department made reasonable efforts to reunify the respondent with her daughter under § 17a-112 (d) (2) and did not prevent the respondent from maintaining a meaningful relationship with her daughter under § 17a-112 (d) (7), (4) refused to draw an adverse inference against the petitioner for failing to call a witness and (5) refused to permit the respondent to call the minor child as a witness. We affirm the judgment of the trial court.

The trial court found the following facts. The respondent is the mother of Lauren, who was born on September 9, 1985. Lauren's father never maintained a relationship with Lauren, and he consented to the termination of his parental rights on August 16, 1996. In 1992, the respondent commenced a relationship with Jeff L.,

who is an alcoholic. The respondent was placed in foster care during her youth and was herself a victim of sexual abuse.

On October 26, 1992, one of the respondent's coworkers informed Jodi Boebert, an officer of the East Hartford police department, that the respondent told her that Jeff had sexually assaulted her six year old daughter, Lauren.[1] The following day, Boebert and an investigator from the department interviewed Lauren at her school. At that time, Lauren had recently turned seven years old. She stated that she told her mother that her private area hurt and that her mother told her to take a bath, but Lauren did not disclose any sexual abuse. Boebert also interviewed the respondent at her home. The respondent denied having made a statement to a coworker that Jeff had assaulted Lauren and refused to reveal Jeff's name or address. On November 3, 1992, Boebert returned to the respondent's home to request that Lauren undergo a physical examination. At this time, the respondent told Boebert that she did not want Jeff to know that the police were questioning Lauren. She explained that she was pregnant with Jeff's child and that she did not want to alienate Jeff.

Subsequently, Boebert received Lauren's medical report, which failed to confirm any sexual abuse. The police department closed its investigation until March 25, 1993, when the parents of one of Lauren's friends reported to Boebert that Jeff had sexually assaulted their daughter in October, 1992. Wendy, an eleven year old friend of Lauren, told her parents that while she was at the respondent's home, Jeff had inserted his finger into her vagina and asked her to go to bed with

---

[1] On November 13, 1992, Boebert received a sworn statement from the coworker that the respondent told her and two other workers that she believed Jeff had sexually assaulted Lauren and that she told Lauren not to talk to anyone about it.

him. Jeff also told Wendy that the respondent knew everything and not to worry.

On March 31, 1993, Boebert and an investigator from the department again interviewed Lauren at her school. Lauren disclosed that Jeff had "licked her private part and made her pee," inserted his finger into her buttocks and put his private part on her private part. This occurred in her mother's bedroom while her mother was at work and while her siblings were asleep. She stated that this contact occurred more than once over a period of one week. Lauren stated that she had told her mother and older sister what had happened, and that her mother told her not to talk to anyone about it. On April 1, 1993, Boebert informed the respondent of Lauren's statements. The respondent stated that Lauren was lying and that she did not believe her daughter's allegations or those of Wendy. The respondent again refused to reveal Jeff's name. The department removed Lauren from the respondent's home on that date. On April 5, 1993, the department obtained an order of temporary custody of Lauren and filed a petition alleging neglect. The trial court entered a finding of neglect on October 21, 1993.

On April 16, 1993, the police arrested the respondent for risk of injury to a child in violation of General Statutes § 53-21, and the criminal court issued a protective order prohibiting the respondent from having any unsupervised contact with Lauren. On January 30, 1996, the petitioner filed a petition for the termination of the respondent's parental rights pursuant to § 17a-112. After a hearing on the matter, the court entered an order terminating the respondent's parental rights on April 28, 1997.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1043.1 et seq. [now Practice Book

(1998 Rev.) § 33-5]. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997)." *In re Drew R.*, 47 Conn. App. 124, 127, 702 A.2d 647 (1997).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995)." *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) Id.

I

We first address the respondent's claim that the trial court improperly concluded that the respondent failed to achieve such a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in her daughter's life. The respondent claims that this finding by the trial court was not legally correct or factually supported in light of certain evidence in the record. Specifically, the respondent relies on a report by Farah Ibrahim, a psychologist, and

the testimony of Dena Rosenbloom, a clinical psychologist. The respondent also points out that she attended eight sessions of a support group for survivors of sexual abuse in 1995.

Ibrahim met with the respondent and Lauren during family counseling sessions in 1993 and 1994. Ibrahim's report, dated February 8, 1994, states that Lauren should eventually be reunited with the respondent, that Lauren and her mother desperately missed each other and that significant progress was made in therapy. The report states Ibrahim's belief that the respondent would benefit from individual therapy and from a course on parenting and appropriate protection of her children.[2] The report also indicates, however, that the respondent ignored Ibrahim's recommendation for individual counseling for two years while Lauren was in foster care. In addition, at a hearing in March, 1994, concerning revocation of the April 16, 1993 protective order, Ibrahim testified that the respondent had acknowledged the possibility that Lauren was molested, but not to the extent indicated on the police report. Ibrahim did not testify at trial, although the respondent introduced a copy of her report.

The respondent also relies on the testimony of Rosenbloom, whom the respondent claims expressed optimism regarding her rehabilitation. We note, however, that the trial court found that the respondent initiated counseling with Rosenbloom four years after Lauren's placement in foster care and two weeks after the commencement of the termination proceedings in this case. Furthermore, Rosenbloom did not testify that the

---

[2] In March, 1993, the trial court suspended family therapy pursuant to Ibrahim's report. Although the trial court recommended that the respondent participate in individual counseling, she attended only one counseling session, after which the therapist discontinued the sessions because the respondent was not "self-motivated" and because the respondent stated that she attended the session only at the insistence of the department.

respondent was rehabilitated and could not provide an opinion concerning how long it would be before the respondent could constructively act as a parent to her daughter.

Robert H. Neems, a psychologist who has worked with the respondent and Lauren since 1995, testified that the respondent had not achieved rehabilitation. He stated that until September, 1996, the respondent expressed her belief that Lauren fabricated the molestation story.[3] Neems also testified to other examples of behavior that indicated a lack of rehabilitation. He testified that the respondent failed to support Lauren emotionally, blamed Lauren and the department for Lauren's placement in foster care, failed to take responsibility for the course of events over the last four years and disrupted Lauren's adjustment in foster care. He stated that the respondent's continued relationship with Jeff was destructive to Lauren. According to Neems, the respondent's behavior shows that she has not acknowledged that it was her own actions at the time of the molestation that led to Lauren's placement in foster care. He also testified that he has seen no indication that the respondent is able to empathize with

---

[3] At the trial in this case, which commenced in March, 1997, the respondent testified to the events of the night that Jeff molested Lauren and her friend Wendy. The respondent stated that she awoke from a nap and saw Jeff sitting on the living room couch with Lauren and Wendy. She walked into the kitchen to get a drink and Jeff followed her. He then told the respondent that he put his hand down the girls' pants and fondled them, but that he did not penetrate them with his finger. The respondent testified that the girls then asked Jeff to read them a Halloween story, which he did. The respondent claims to have been confused by the girls' continued interest in Jeff in light of the sexual contact that Jeff told her had just occurred. The next morning, Jeff denied having admitted to this conduct.

Neems testified that the respondent's recent acknowledgment that Lauren was molested left unexplained her continued relationship with Jeff and her constant disruption of Lauren's placement in foster care. One of the department caseworkers testified that although the respondent ultimately acknowledged that Jeff molested Lauren, she did not believe the extent of the molestation that took place, namely digital penetration, oral sex and contact between Jeff's penis and Lauren's vagina.

Lauren's feelings and that the respondent has no under-
standing of what Lauren's needs are. He concluded that
the respondent was not likely to change her behavior
significantly.

In addition to Neems' testimony, the trial court heard
testimony from two of the department's caseworkers.
One of the caseworkers testified that the respondent
revealed to her that she had been sexually abused by
her foster parents, that it did not bother her and that
she believed that Lauren had fabricated the molestation
story. The other caseworker testified that, although the
respondent entered counseling sessions for survivors
of sexual abuse, the respondent told the caseworker
that she attended the sessions because only her attorney
instructed her to do so and that the classes were not
helping her. This caseworker testified that the respon-
dent denied any need for individual counseling.

Section 17a-112 "requires the trial court to analyze
the respondent's rehabilitative status as it relates to the
needs of the particular child, and further, that such
rehabilitation must be foreseeable within a reasonable
time." (Internal quotation marks omitted.) *In re Chris-
tina V.*, supra, 38 Conn. App. 221. "A determination
by the trial court . . . that the evidence is clear and
convincing that the parent has not rehabilitated herself
will be disturbed only if that finding is not supported
by the evidence and [is], in light of the evidence in the
whole record, clearly erroneous." (Internal quotation
marks omitted.) Id.

The trial court's finding with respect to the respon-
dent's rehabilitative status is supported by the evidence.
The evidence at trial showed that the respondent has
failed to believe Lauren's account of the molestation,
continues her relationship with Lauren's molester and
lacks an understanding of Lauren's needs. The trial
court gave credence to Neems' testimony that the

respondent is not rehabilitated. "Courts are entitled to give great weight to professionals in parental termination cases." Id. The court also found persuasive Rosenbloom's testimony that she could not estimate how long it would take the respondent to gain insight into her denial that Lauren was molested and to cope with her own feelings of anger. The trial court noted that Lauren has been in foster care for four years and determined that any further delay in Lauren's status would be unreasonable. On the basis of the record before the trial court, we conclude that the court's finding was supported by clear and convincing evidence and was not clearly erroneous.

## II

The respondent next claims that the trial court improperly found that she had denied Lauren, by reason of acts of commission or omission, the care, guidance or control necessary for her physical, educational, moral or emotional well-being under § 17a-112 (b) (3). The respondent contends that she protected Lauren by preventing Jeff from visiting her home between the time of the October, 1992 incident and the time that Lauren was placed in foster care, and that she believed Lauren's account of sexual contact.

The trial court concluded that the respondent's failure to believe Lauren when confronted with Lauren's account of the incidents of abuse as well as with Jeff's admission of abuse, her failure to protect Lauren from further abuse, her failure to avail herself of reunification services and her failure to cooperate with the police and the department to ensure Lauren's protection constituted acts violative of § 17a-112 (b) (3). See *In re Felicia D.*, 35 Conn. App. 490, 502, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994).

The record supports the court's findings. Neems testified that the respondent's actions "have been very emotionally abusive of Lauren and very, very destructive to

Lauren's welfare for many years now. At least the four years that Lauren has been in foster care. So to say that [the respondent] feels guilty about the situation and would like to repair it is not reflected in any of the behavior that I have certainly seen since that point in time. . . . She has not shown a willingness to make the changes that would repair this relationship." Neems also testified that he had a conversation with Ibrahim in 1995, after the date of her report, in which Ibrahim stated that she terminated the therapy sessions between the respondent and Lauren because of the impact of the respondent's act of blaming Lauren and her assertions that Lauren was lying. Furthermore, Rosenbloom testified that the act of not believing a child can be more traumatic to the child than the abusive event itself. One of the department caseworkers testified that the respondent never acknowledged that Lauren was molested and that Lauren was aware that her mother did not believe her.

Section 17a-112 authorizes the termination of parental rights where specific acts of parental commission or omission have caused serious physical or emotional injury to a child. Id., 502. We conclude that the trial court's determination that grounds existed under § 17a-112 to terminate the respondent's parental rights was not clearly erroneous.

### III

The respondent next claims that the trial court's conclusion under § 17a-112 (d) (2) and (7)[4] that the department made reasonable efforts to reunify the respondent

---

[4] General Statutes (Rev. to 1995) § 17a-112 (d) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding . . . (2) whether the department of children and families has made reasonable efforts to reunite the family . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct . . . of any . . . person . . . ."

and Lauren, and that the department did not prevent reunification, was improper and violated her right to a familial relationship guaranteed by the state and federal due process clauses.[5] The respondent contends that the department prevented reunification and that the state may not terminate parental rights where the state has created the condition under which termination is sought.

The procedural facts relevant to the respondent's claim are as follows. On May 23, 1994, the trial court granted the respondent's motion to revoke the order of commitment and entered an order of protective supervision for one year. On June 15, 1994, however, the criminal court again entered a protective order prohibiting the respondent's contact with Lauren as a result of the respondent's arrest for multiple violations of the April 16, 1993 protective order. On June 27, 1994, on a motion by the department, the trial court modified the prior order of protective supervision and committed Lauren to the protective custody of the commissioner of the department. Thereafter, the respondent filed a motion to dissolve or modify the protective order. The trial court heard oral argument on August 12, 1994, and found that the protective order was entered because the respondent had failed to protect Lauren from sexual abuse by threatening to punish her if she told anyone about it, harassed and threatened to kill the coworker who reported the abuse to the department and flagrantly violated the earlier protective order. The trial court denied the respondent's motion, and there was no contact between Lauren and the respondent from June 15, 1994, through June 19, 1995.

---

[5] "The due process provision of the Connecticut constitution has the same meaning and imposes similar constitutional limitations as that of the federal constitution." *State* v. *Anonymous*, 179 Conn. 155, 162 n.4, 425 A.2d 939 (1979), citing *McKinney* v. *Coventry*, 176 Conn. 613, 616, 410 A.2d 453 (1979).

"The right to the integrity of the family is among the most fundamental rights guaranteed by the fourteenth amendment." *State* v. *Anonymous*, 179 Conn. 155, 162, 425 A.2d 939 (1979). With respect to the respondent's claim that the department prevented reunification, we note that "a state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected under the due process clause." *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992). In this case, however, the record does not support the respondent's contention.

The respondent claims that Lauren's foster mother and the department thwarted reunification, and precipitated the lack of ongoing contact between the respondent and Lauren. She refers to the foster mother's report to the police that the respondent was violating the protective order by repeatedly trying to contact Lauren, and to the department's report of these contacts to the prosecutor, which led to the revocation of the May 23, 1994 order. The respondent fails to recognize that the trial court issued the May 23, 1994 protective order because of the respondent's own actions in violating the earlier protective order and in threatening a witness. The respondent created the conditions under which the department sought termination in this case.

The trial court found that the respondent's decision to protect Jeff, to deny or disregard the effects of sexual abuse on Lauren and to refuse counseling services prevented the respondent from having a relationship with Lauren. The department offered various counseling services to assist the respondent in addressing her problems and to facilitate reunification with Lauren, but the respondent failed to avail herself of them.

We conclude that the record supports the trial court's factual findings under § 17-112 (d).

## IV

The respondent next claims that the trial court improperly refused to draw an adverse inference against the petitioner for failing to call as a witness Robert Meier, a psychologist who performed a court-ordered psychological evaluation of the respondent and Lauren for purposes of the termination hearing. The respondent requested that the trial court draw an adverse inference against the petitioner under *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), which the trial court refused to do.

"The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." (Internal quotation marks omitted.) Id., 675. "To take advantage of this rule permitting an adverse inference, the party claiming the benefit must show that he is entitled to it." (Internal quotation marks omitted.) *State* v. *Oliver*, 48 Conn. App. 41, 45, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998). "That is, the party claiming the benefit of the ruling must show that the witness is available and that the witness is one whom the party would naturally produce." (Internal quotation marks omitted.) Id., 46; see *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.*, supra, 675.

"Appellate courts will not disturb a trial court's *Secondino* ruling absent a clear abuse of the trial court's discretion. See *State* v. *Grant*, 221 Conn. 93, 106, 602

A.2d 581 (1992). In reviewing claims that the trial court abused its discretion, great weight is attached to the trial court's decision and every reasonable presumption is given in favor of its correctness. *State* v. *Beckenbach*, 198 Conn. 43, 47, 501 A.2d 752 (1985)." *State* v. *Barnes*, 47 Conn. App. 590, 594, 706 A.2d 1000 (1998).

The respondent has failed to establish that she was entitled to an adverse inference because she has failed to demonstrate that Meier was a witness who, by reason of his relationship to the petitioner or to the issues in the petitioner's case-in-chief, the petitioner would naturally be expected to call. As noted by the trial court, Meier's evaluation reports were ordered by the trial court and were available to both parties. The respondent could have subpoenaed Meier to testify but did not. "The failure of a party to call as a witness a person who is available to both parties and who does not stand in such a relationship to the party in question or to the issues that that party would naturally be expected to produce him if his testimony was favorable affords no basis for an unfavorable inference." *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 676. In addition, the respondent failed to establish that Meier was available to testify during the petitioner's case-in-chief or that Meier's testimony would not have been cumulative of other evidence in the record.

The respondent claims that the petitioner's failure to produce Meier as a witness deprived the court of an opportunity to consider the results of his examination in ruling on the petition. A review of the transcript in this case debunks the respondent's claim. In oral argument before the trial court on April 4, 1997, counsel for the respondent stated that he did not want Meier's report to come into evidence, but did want an opportunity to talk to Meier before resting his case. When asked by the trial court why he wanted to talk to Meier if he did not want his report to come into evidence, counsel

responded that there was new information regarding the case since the date of the report. The trial court pointed out that Meier's report was written in June, 1996, and counsel had nine months prior to the termination hearing to talk to Meier. On April 7, 1997, the trial court declined to draw an adverse inference against the petitioner for not calling Meier, noting that the petitioner had no obligation to do so if it felt it had proven its case.

We conclude that the trial court was within its discretion in refusing to draw an adverse inference against the petitioner for failing to call Meier.

## V

The respondent's final claim is that the trial court improperly refused to allow her to call Lauren as a witness, thereby violating her statutory right of confrontation under General Statutes § 46b-135 (b).[6] See *In re Noel M.*, 23 Conn. App. 410, 421, 580 A.2d 996 (1990) (respondent's rights to confrontation and cross-examination in parental termination case statutory, not constitutional in nature). The respondent claims that Lauren was a necessary witness because she was a party to all of the allegations that led to the termination proceeding.[7]

---

[6] General Statutes § 46b-135 (b) provides: "At the commencement of any proceeding on behalf of a neglected, uncared-for or dependent child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them, and such counsel and such parent or guardian of the child or youth shall have the rights of confrontation and cross-examination."

[7] The scope of the proposed inquiry the respondent presents to this court on appeal varies widely from the scope of the inquiry the respondent presented to the trial court in its motion to compel Lauren's testimony. In her brief to this court, the respondent asserts that Lauren's testimony was relevant to the following issues: the events of the abuse; Jeff's presence at her home after the alleged sexual contact; her efforts to protect Lauren; Lauren's feelings of safety; Lauren's feelings toward her; what it was like for Lauren to live in her house with her brothers and sisters; what it was

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998). This court has held that cases involving the testimony of abused children require special consideration. *In re Noel M.*, supra, 23 Conn. App. 421. "The United States Supreme Court has recognized that competing interests may warrant dispensing with confrontation at trial." (Internal quotation marks omitted.) Id., quoting *State* v. *Jarzbek*, 204 Conn. 683, 693, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

---

like for Lauren to visit with her in the presence of therapists and social workers; and what it was like for Lauren to live with her foster family.

In arguing the motion to the trial court, counsel stated: "The areas that we would be interested in knowing about is just the love and affection that [Lauren] holds for her mother, where she desires to live and the reasons why in the child's own words." Later in the proceedings, counsel for the respondent stated: "We still would like to have [Lauren] talk to the court in private in chambers without lawyers present, without parties present and to have a discussion regarding Lauren's intentions, her wishes, in accordance with findings that the court—and the relationship she might have with her mother. . . . I would request an in chambers, private discussion with the child . . . to get her intentions and wishes free from any influence . . . ." The trial court asked counsel: "Mr. Andreini, it's my understanding that you want me to talk to the child so that I can get a sense of what the child wants to do?" Counsel replied: "Yes, Your Honor."

The court's decision not to question Lauren in camera is supported by our decision in *In re Wayne A.*, 25 Conn. App. 536, 595 A.2d 373 (1991). In that case, the respondent father claimed that the trial court violated his rights under § 46b-135 (b) by not allowing him to call as witnesses two employees of the department. We held that § 46b-135 (b) was inapplicable because it was within the trial court's discretion to deny the request on the basis of relevance or cumulative evidence. Id., 542. In the present case, the trial court found that Lauren's testimony was not necessary based on "all of the evidence" in the case and that requiring Lauren to testify would victimize her. The court stated: "I have a distinct disinclination to have children participate in these proceedings because it sort of victimizes them again, and I don't want a child to think that they made the decision. . . . The child gets placed in the position of divided loyalty, and I don't think, based upon all of the evidence that's here, that that's a necessary bit of information." In addition, Neems testified that in his opinion, requiring Lauren to testify would be destructive to her.

The trial court's decision not to question Lauren in this matter was a proper exercise of its discretion and was rendered " 'with regard to what [was] right and equitable under the circumstances and the law . . . .' " *New London Federal Savings Bank* v. *Tucciarone*, supra, 48 Conn. App. 92.

The judgment is affirmed.

In this opinion the other judges concurred.