JERRY HERRING *v.* YVONNE DANIELS ET AL.
(AC 21352)

Schaller, Bishop and Shea, Js.

650

Argued January 11—officially released July 2, 2002

*Robert J. Shluger*, for the appellant (plaintiff).

*Valeria L. Caldwell-Gaines*, for the appellee (named defendant).

*Opinion*

SHEA, J. The plaintiff, Jerry Herring, appeals from the judgment of the trial court in favor of the defendant, Yvonne Daniels, in a partition action in which the plaintiff claims an equitable interest in real property owned by the defendant.[1]

On appeal, the plaintiff claims that the court improperly (1) failed to find that the parties held themselves out to the public as husband and wife, regarded the subject premises as marital property and treated it as such, (2) concluded that two mortgage loans were for the sole benefit of the plaintiff, (3) concluded that the failure of the parties to transfer title to one-half of the subject property to the plaintiff during the course of

---

[1] Although the plaintiff also named the Hartford Firefighters Federal Credit Union as a defendant, the credit union did not participate in the action and is not a party to this appeal.

their relationship was dispositive as to the issue of the parties' intent to treat the property as a shared asset, (4) failed to address the plaintiff's allegation that the parties' conduct evinced an implied agreement to share ownership of the subject property, (5) failed to find that the plaintiff was entitled to a share of certain cash equity removed from the subject property by the defendant and (6) considered special defenses that previously had been stricken. We affirm the judgment of the trial court.

The following facts were adduced in a trial to the court. The defendant is the record titleholder of real property located at 81 Canterbury Street in Hartford. The defendant first met the plaintiff in 1981, and they had an affair that lasted for approximately six months. During that time, the plaintiff asked the defendant to cosign a $3000 loan for him, which she did.[2] The parties resumed their relationship in 1985. In early 1987, the plaintiff moved into the house at 81 Canterbury Street and resided there on a semiregular basis until August, 1998, when the defendant obtained a restraining order against the plaintiff.[3] During that period, the defendant's daughter and son-in-law also lived in the subject premises. Although the defendant's relatives paid rent to the defendant, the plaintiff did not pay any rent.

During the period in which the plaintiff was living at 81 Canterbury Street, he obtained two loans from his credit union, Hartford Firefighters Federal Credit Union, cosigned by the defendant and secured by mortgages on the defendant's real estate. The first loan was in the amount of $60,000. At the time that loan was

[2] That loan duly was repaid.

[3] In August, 1998, the plaintiff physically attacked one of the defendant's friends. In retaliation for the defendant testifying against the plaintiff regarding that assault and battery, the plaintiff told federal authorities that the defendant was laundering drug money. As a consequence of that charge, the defendant's son was arrested and currently is facing trial in federal court.

obtained, the defendant's property was subject to three encumbrances, a first mortgage to Northeast Savings Bank for $23,327, a second mortgage held by the mortgage brokerage Conn and Conn Company for $11,610, and a lien for $2300 in favor of the state of Connecticut. As a condition to disbursing the loan proceeds, the second mortgage to Conn and Conn Company and the state tax lien had to be paid from the gross proceeds of the loan. The plaintiff received all of the net proceeds of the loan. Beginning in February, 1987, the monthly payments on that loan were made by automatic payroll deduction from the plaintiff's paycheck.

In May, 1993, the parties obtained a second loan with the Hartford Firefighters Federal Credit Union, this time in the amount of $100,000. The proceeds of that loan were used to pay off the first mortgage to Northeast Savings, an outstanding balance to Associated Financial Services for $2388.02 and the balance of the previous credit union loan. The net balance after paying those debts was approximately $60,000. Because the plaintiff was concerned that if the loan proceeds were deposited in an account under his name they would be seized to pay delinquent taxes, the defendant agreed to open a separate account in her name in which to deposit the funds. Accordingly, those proceeds were deposited in an account in the name of the defendant at Bank of Boston. Of those proceeds, the plaintiff received approximately $35,000 over the course of two months. The defendant received a $5000 cash disbursement at the time the check was deposited in the account. Although the record is unclear as to what became of the remaining $20,000, those funds apparently were dissipated as a result of various trips and gambling excursions made at the plaintiff's initiative. The payments on that loan were deducted from the plaintiff's monthly pension payments beginning on June 20, 1993. The out-

standing balance on the loan at the time of the plaintiff's last regular payment, in August, 1998, was $56,772.63.

In January, 1999, in an attempt at reconciliation, the plaintiff moved back into the defendant's home. At that time, the plaintiff paid an additional $3500 on the loan, the automatic pension deductions having been previously discontinued. Despite tentative discussions regarding marriage, the reconciliation between the parties proved unsuccessful, and in December, 1999, the plaintiff was again forced to vacate the defendant's house pursuant to a restraining order.

On December 22, 1999, the plaintiff filed an amended complaint in three counts alleging an equitable interest in the property on the basis of his having resided there and assumed the mortgage payments, a contractual right based on express, verbal and implied understandings that the ownership of various assets was to be shared, and a claim for restitution based on quantum meruit.

The court found that there was insufficient evidence to support any of the claims asserted by the plaintiff and accordingly rendered judgment for the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff's first claim on appeal is that the court improperly failed to find that the parties held themselves out to the public as being married, and regarded the subject premises as marital property and treated it as such. The plaintiff argues that the court was required to make such a finding as a matter of law on the basis of the court's subordinate finding that the parties were "cohabiting, unmarried lovers."[4]

[4] We note that the plaintiff also challenges the court's factual finding that there was no credible evidence that the plaintiff took care of the maintenance and repairs on the house. Rather than raising his claim separately, however, the plaintiff merely appends his argument to the end of his principal claim.

Although a court's findings of facts are ordinarily reviewed under a clearly erroneous standard, the plaintiff's claim raises a question of law and, therefore, our review is plenary. *Lussier* v. *Spinnato*, 69 Conn. App. 136, 144, 794 A.2d 1008 (2002).

In support of his first argument, the plaintiff cites the definition, adopted by our Supreme Court in *Wolk* v. *Wolk*, 191 Conn. 328, 332, 464 A.2d 780 (1983), that "[c]ohabitation is a dwelling together of man and woman in the same place in the manner of husband and wife." The plaintiff apparently interprets the phrase "in the manner of husband and wife" to suggest that cohabitation is for all intents and purposes synonymous with marriage, and that cohabitation raises all of the same presumptions regarding the treatment of assets as does marriage. Such an interpretation, however, would essentially transform cohabitation into common-law marriage, contrary to the refusal of this state to recognize such relationships. See *McAnerney* v. *McAnerney*, 165 Conn. 277, 285, 334 A.2d 437 (1973) ("Although other jurisdictions may recognize common-law marriage or accord legal consequences to informal marriage relationships, Connecticut definitely does not. . . . It follows that although two persons cohabit and conduct themselves as a married couple, our law neither grants to nor imposes upon them marital status." [Citations omitted.]) "[C]ohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties." *Boland* v. *Catalano*, 202 Conn. 333, 339, 521 A.2d 142 (1987).[5]

---

Practice Book § 67-4 (d) requires that the arguments presented on appeal be "divided under appropriate headings into as many parts as there are points to be presented . . . ." Because the plaintiff has failed to comply with that rule, we decline to review his claim. See generally *Mullen & Mahon, Inc.* v. *Mobilmed Support Services, LLC*, 62 Conn. App. 1, 773 A.2d 952 (2001) (refusal to review inadequately briefed claim not included in statement of issues in brief).

[5] We note that even in some jurisdictions that do recognize common-law marriage, cohabitation alone is not enough to create a valid common-law

Rather, where the parties have established an unmarried, cohabiting relationship, it is the specific conduct of the parties within that relationship that determines their respective rights and obligations, including the treatment of their individual property. See id., 340–41. Any such finding must be determined by reference to the unique circumstances and arrangements between the parties present in each case. Those matters are questions of fact that are within the singular province of the trial court, and can only be determined by evaluating the credibility of the witnesses and weighing conflicting evidence. See *Vesce* v. *Lee*, 185 Conn. 328, 335, 441 A.2d 556 (1981).

Accordingly, we conclude that the court was not bound as a matter of law to find that that the parties treated the subject property as a "marital asset" simply on the basis of having found that they were "unmarried, cohabiting lovers."

## II

The plaintiff next claims that the court improperly found that the two mortgage loans were for the sole benefit of the plaintiff. We conclude that the evidence presented was sufficient to permit the court, as the trier of fact, reasonably to find that the loans benefited the plaintiff rather than the defendant.

"When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous. . . . In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." (Citation omitted; internal quotation marks omitted.) *Hoffman Fuel Co.*

marriage. See *Collier* v. *Milford*, 206 Conn. 242, 252, 537 A.2d 474 (1988) (interpreting pertinent laws of South Carolina, Alabama).

*of Danbury* v. *Elliott,* 68 Conn. App. 272, 276, 789 A.2d 1149, cert. denied, 260 Conn. 918, 797 A.2d 514 (2002).

It is undisputed that certain encumbrances on the defendant's property were paid out of the gross proceeds of the two loans obtained by the plaintiff in 1987 and 1993. The plaintiff argues that discharging those encumbrances provided the defendant with a benefit and, accordingly, that the court's conclusion that the loans were for the sole benefit of the plaintiff is not supported by the evidence and is clearly erroneous.

A benefit is "something that promotes well-being; advantage . . . or useful aid: help." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). At the time that the parties renewed their relationship in 1987, but prior to obtaining the first loan, the total outstanding debt on the defendant's property was $37,237.[6] The value of the defendant's property at that time was $165,000. At the conclusion of the parties' dealings with each other, the debt on the defendant's property had grown to $58,000 as a result of the various loans. Thus, after fourteen years, rather than having been reduced in any significant degree, the encumbrances on the defendant's property actually increased by 64 percent. The defendant is liable on that debt as the cosigner of the loans. Such a circumstance can hardly be characterized as having conferred an advantage or benefit on the defendant.

Moreover, the court found that the monthly payments made by the plaintiff were in consideration of the defendant's assistance to him. The evidence in the record supports that finding. From the proceeds of the first loan, $13,610 of the prior encumbrances were paid out of the gross proceeds. The payments on that loan were

[6] That figure represents a $23,327 first mortgage to Northeast Savings Bank, a second mortgage for $11,610 to Conn and Conn Company, and a lien for $2300 in favor of the state of Connecticut.

made from February, 1987, until May, 1993, when the parties refinanced. When averaged over the payment period, the plaintiff's payment of the prior encumbrances amount to approximately $181 per month for the use and occupancy of the subject premises. Similarly, the payment of the $25,715 in encumbrances on the property out of the gross proceeds of the second loan, when averaged over the five years that the plaintiff continued to make payments, amounts to approximately $428 per month. In light of the plaintiff's admission that he did not pay rent while he lived in the subject premises, the court was justified in finding that this sum was paid by the plaintiff in consideration of the defendant's assistance to him. Certainly, that amount is not so large as to require the inference that it represented anything more than a reasonable rent substitute. Accordingly, we cannot say that the court's finding in that regard was clearly erroneous.

We note that the plaintiff also directs this court's attention to the apparent failure of the trial court to incorporate the defendant's response to a "request for admission" into the operative facts of its memorandum of decision. Specifically, the plaintiff claims that the finding of the court that the loans at issue were for the sole benefit of the plaintiff conflicts with the defendant's admission that "[t]he net proceeds in the amount of $62,685.86 . . . from the $100,000 loan [from the credit union] were initially deposited into the defendant's bank account, and then subsequently divided and paid out to the two parties." The court, however, did not find that the defendant received no money from the loan transactions. Rather, the court found merely that the loans were procured for the plaintiff's benefit. Our review of the record does not reveal an improper failure of the court to accord the defendant's admission its appropriate weight. The evidence supports the finding that the loans were *obtained* for the plaintiff's bene-

fit and that any benefit derived from those loans by the defendant merely was incidental. We conclude therefore that the court's conclusion that the two mortgage loans were for the sole benefit of the plaintiff was not clearly erroneous.

## III

The plaintiff also claims that the court improperly treated the fact that title to the property had not, in fact, been modified to reflect the parties' joint ownership as dispositive of the issue of the parties' intent to treat the property as a shared asset. The plaintiff infers that the court accorded that particular fact undue significance because "[the court] mentioned this underlying fact twice in its [d]ecision."

We first briefly address the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court." (Internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 598, 790 A.2d 1178 (2002). Because the claim, as framed by the plaintiff, essentially challenges the court's finding as to the intent of the parties, we review the claim to determine whether that finding is clearly erroneous. The "determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999).

We agree with the plaintiff that a failure to transfer title is not dispositive in determining the rights and interests of the parties with respect to the subject property. See *Boland* v. *Catalano*, supra, 202 Conn. 336–38 (finding of implied agreement between parties to share fruits of joint labor despite fact that title to real property held only in name of defendant). There is, however, no

evidence in the record to suggest that the court regarded the parties' failure formally to transfer title to the subject property as dispositive. The court's findings of fact cover two and one-half pages in the memorandum of decision and include numerous facts in addition to the parties' failure to transfer title to the property. For example, the court stated in its findings that there was no credible evidence of any agreement between the parties to share the property, there was no credible evidence that the parties held themselves out to the public as husband and wife, and there was no credible evidence that the plaintiff performed maintenance and repairs on the house or that the parties had made any joint purchases of property. The plethora of operative facts cited by the court supports its conclusion regarding the intent of the parties and belies the plaintiff's suggestion that the court relied solely on any one fact as dispositive. We conclude, therefore, that the court's finding was not clearly erroneous.

IV

The plaintiff claims that the court improperly failed to consider whether the evidence presented at trial supported a finding of an implied agreement between the parties to share equally the ownership of the subject property. The plaintiff argues that the court failed to consider whether the evidence presented showed conduct sufficient to establish an implied agreement or some other tacit understanding between the parties to share the subject property. The plaintiff argues that the court considered only whether an express contract had been proven. In support of his contention, the plaintiff cites the failure of the court to mention the case law discussed by the plaintiff and the court's failure to find that the facts in those cases proved the existence of an implied contract as a matter of law.

We agree that "[i]n the absence of an express contract, the courts should inquire into the conduct of the

parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties." (Internal quotation marks omitted.) Id., 340–41. We do not agree, however, that the court failed to do so in the present case.

"An implied contract depends upon the existence of an actual agreement between the parties. . . . Whether the parties have entered into such an agreement is a question of fact." (Citation omitted.) *Christensen* v. *Bic Corp.*, 18 Conn. App. 451, 454, 558 A.2d 273 (1989). "Our review of the trial court's factual findings is limited to the question of whether the findings are clearly erroneous." *St. Catherine's Church Corp. of Riverside* v. *Technical Planning Associates, Inc.*, 9 Conn. App. 682, 685, 520 A.2d 1298 (1987).

Although the court's memorandum of decision does not explicitly state that the proven facts failed to establish an implied agreement, the court's catalog of findings clearly addresses the absence of those circumstances that would otherwise establish the existence of an implied agreement to share the subject property. The court found that the monthly payments were made by the plaintiff in consideration of the defendant's assistance to him and, thus, were not based on an agreement, implied or otherwise, to share the property.[7] The court also rejected the plaintiff's testimony that he performed substantial work on the property, finding that there was no credible evidence that he took care of the maintenance and repairs on the house. Finally,

---

[7] We note that the plaintiff made payments on the loans only during the periods in which he actually was living in the house. He discontinued payment after he was forced to vacate the subject property. That circumstance supports the court's finding that such payments were not made pursuant to any agreement between the parties that the plaintiff would obtain a permanent ownership interest in the subject property and is indicative that the plaintiff himself apparently did not consider the payments in that light.

the court found that the plaintiff "offered no credible evidence to show that he and the defendant ever made any joint purchases of property; that he made any repairs or renovations that significantly improved the value of the defendant's property; that they shared joint bank accounts, pooled their earnings or income, filed joint tax returns or ever had signatory powers to each other's charge, bank or other accounts." Each of those findings goes directly to circumstances that would, if supported by the evidence, tend to show an implicit agreement to share assets. See *Boland* v. *Catalano*, supra, 202 Conn. 340–41. We conclude, therefore, that the court properly addressed the plaintiff's cause of action alleging an interest in the subject property on the basis of an implied agreement between the parties and that the court's failure to find such an agreement was not clearly erroneous.

V

The plaintiff also claims that the court improperly failed to find that he was entitled, under the doctrines of quantum meruit and unjust enrichment, to a share of the cash equity that had been removed from the subject property by the defendant in April and August, 1999. We disagree.

The plaintiff's claim involves three mortgage loans obtained by the defendant, the first on April 23, 1999, and the second and third on August 13, 1999. The first loan was for $30,000, out of which the defendant realized a net gain of $24,719. The gross amount of the second mortgage refinance loan was $82,500, and the third involved a gross balance of $ 16,500. The proceeds of the second loan were used to pay off the balance remaining on the $100,000 loan from the plaintiff's credit union, which was $50,375 at that time, as well as the outstanding balance on the loan of April 23, 1999. The net proceeds realized on that loan were $11,842.

For the defendant to obtain those 1999 mortgage loans, it was necessary on both occasions to obtain a release of a lis pendens that the plaintiff had placed on the subject property. The plaintiff's only role in securing those loans consisted of releasing the lis pendens. In return for the plaintiff's release of the lien, the defendant paid him $2500.

The plaintiff argues that he is entitled to a share of the cash equity realized by those 1999 mortgage loans because he was responsible for the buildup of the equity in the property by paying down the balances of the previously obtained mortgage loans from his credit union. He also argues that he is entitled to a share of the cash equity because he was directly responsible for that equity being made available to the defendant by releasing the lis pendens on the property. We are unpersuaded.

"[T]he determinations of whether a particular [set of circumstances] was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, 58 Conn. App. 183, 186, 753 A.2d 390, cert. granted on other grounds, 254 Conn. 919, 759 A.2d 1025 (2000); see also *McNeil* v. *Riccio*, 45 Conn. App. 466, 475, 696 A.2d 1050 (1997).

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was

to the plaintiffs' detriment. . . . *McNeil* v. *Riccio*, supra, 45 Conn. App. 475; see also *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994)." (Internal quotation marks omitted.) *Paulsen* v. *Kronberg*, 66 Conn. App. 876, 878, 786 A.2d 453 (2001).

Accordingly, in the present case, the plaintiff was required to prove in the trial court that the defendant had received a benefit at his expense under circumstances that would otherwise make it unjust for her to retain the benefit. In part II, we concluded that the court's findings that (1) the loans from the plaintiff's credit union were obtained for the sole benefit of the plaintiff and (2) that the payment of the preexisting debts on the property from the proceeds of those loans were in consideration of the defendant's assistance to the plaintiff were not clearly erroneous. Thus, to the extent that the plaintiff made payments on those credit union loans, he did no more than fulfill his legal obligation as the beneficiary of those loans. Additionally, by the plaintiff's own admission, the defendant paid him $2500 in exchange for the release of the lis pendens.[8] In light of those admissions and the findings by the court, we cannot conclude that the court abused its discretion in failing to find that the defendant was unjustly enriched at the plaintiff's expense.

VI

The plaintiff claims finally that the court improperly considered special defenses that had been stricken.

[8] Although the plaintiff suggests that he was induced to release the lis pendens by the defendant's expression of affection for him and by the parties' indefinite marriage plans, there is nothing in the record to indicate that the court found that explanation credible. See *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 839, 784 A.2d 905 (" '[I]t is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [T]he trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the

Because we already have determined that the court properly concluded that the plaintiff failed to meet his burden of proof to establish either an equitable interest in the subject property or to show a contractual right on the basis of an express or implied agreement between the parties, it is unnecessary for us to review his claim. "[T]his court is authorized to rely upon alternative grounds supported by the record to sustain a judgment." (Internal quotation marks omitted.) *CMG Realty of Connecticut, Inc.* v. *Colonnade One Ltd. Partnership*, 36 Conn. App. 653, 660, 653 A.2d 207 (1995). The failure of the plaintiff to prove his case provides a ground for affirming the court's judgment independent of any alleged reliance by the court on the stricken special defenses.

The judgment is affirmed.

In this opinion the other judges concurred.

---

credibility of witnesses.' "), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

